# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GEORGE WILLIAM WINTERS,

Defendant-Appellant.

FOR PUBLICATION
July 18, 2017
9:05 a.m.

No. 333009
Mason Circuit Court
LC No. 14-002895-FC

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his plea-based conviction of second-degree arson, MCL 750.73(1) (willful or malicious burning of a dwelling), and attempted arson, MCL 750.92 (attempt). The trial court sentenced defendant as a third habitual offender, MCL 769.11, to serve concurrent prison terms of eight to 40 years for the arson conviction and two years and 10 months to 10 years for the attempted arson conviction. Defendant's convictions stem from his burning and attempted burning of tents located at a homeless campsite. We affirm.

Defendant's appeal is focused on the circumstances surrounding his entry of a no contest plea. MCR 6.302 governs guilty and no contest plea proceedings. *People v Blanton*, 317 Mich App 107, 118; 894 NW2d 613 (2016). Pursuant to the court rule, a "court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant or defendants under oath and personally carry out subrules (B)-(E)." MCR 6.302(A). Defendant argues that he should have been allowed to withdraw his plea because the trial court did not comply with subrules (B)(2) and (B)(3). Defendant raised these same arguments below in a motion to withdraw his plea, which the court denied. We review the court's decision for an abuse of discretion. See *People v Cole*, 491 Mich 325, 329; 817 NW2d 497 (2012). A trial court abuses it discretion when its decision "results in an outcome falling outside the principled range of outcomes." *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006).

---

[1] *People v Winters*, unpublished order of the Court of Appeals, entered July 1, 2016 (Docket No. 333009).

While strict compliance with MCR 6.302 is not essential, our Supreme Court has applied the doctrine of substantial compliance—whether a particular departure from MCR 6.302 requires reversal or remand for additional proceedings will depend on the nature of the noncompliance. *People v Plumaj*, 284 Mich App 645, 649; 773 NW2d 763 (2009). This Court must consider the record as a whole to determine whether a guilty plea was made knowingly and voluntarily." *Id*.

MCR 6.302(B)(2) provides that a defendant offering to plead guilty or nolo contendere be informed of "the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law, including a requirement for mandatory lifetime electronic monitoring under MCL 750.520b or 750.520c[.]" "[W]hen a defendant is subject to an enhanced sentence as an habitual offender, that enhanced sentence is part of the maximum prison sentence described in MCR 6.302(B)(2)." *People v Brown*, 492 Mich 684, 701; 822 NW2d 208 (2012). Defendant asserts, and plaintiff agrees, that he was misinformed by the court about the possible sentencing facing him if he entered a plea to attempted arson. Specifically, he was told that his maximum term of imprisonment for the attempted arson charge was 20 years when the correct maximum was 10 years.[2] Defendant argues that given this error, he did not understand the consequences of his plea.

"[A] defendant entering a plea must be fully aware of the direct consequences of the plea." *Cole*, 491 Mich at 333 (internal quotation marks and citations omitted). "The most obvious direct consequence of a conviction is the penalty to be imposed. It is, therefore, well-recognized that the defendant must be apprised of the sentence that he will be forced to serve as the result of his guilty plea and conviction." *Id.* at 334 (internal quotation marks and citation omitted). This principle is embodied in MCR 6.302(B)(2).

But a misstatement of the maximum possible sentence does not require reversal where no prejudice is shown. *People v Broden*, 147 Mich App 470, 472; 382 NW2d 799 (1985), rev'd on other grounds 428 Mich 343 (1987) (involving a challenge under GCR 1963, 785.7(1)(b)[3] to a

_____

[2] Under MCL 750.73(3), "[s]econd degree arson is a felony punishable by imprisonment for not more than 20 years . . . ." The attempt statute provides that if a person is convicted of attempting a crime punishable by more than five years' imprisonment, the maximum penalty is "imprisonment in the state prison not more than 5 years." MCL 750.92(2). A court may sentence a third-offense habitual offender "to imprisonment for a maximum term that is not more than twice the longest term prescribed by law." MCL 769.11(1)(a). Therefore, the maximum penalty defendant was facing for the attempted arson charge was 10 years.

[3] At the time, GER 1963, 785.7(1)(b) provided as follows:

A defendant may plead guilty or nolo contendere only with the court's consent. Prior to accepting the plea, the court shall personally carry out subrules 785.7(1)-(4).

(1) Speaking directly to the defendant, the court shall tell him:

* * *

plea-based conviction). See also *In re Guilty Plea Cases*, 395 Mich 96, 113; 235 NW2d 132 (1975) ("Noncompliance with a requirement of Rule 785.7[4] may but does not necessarily require reversal."). Because defendant was not told that he was facing a sentence less than what it actually was, he cannot show that he was prejudiced. See *People v Shannon*, 134 Mich App 35, 38; 349 NW2d 813 (1984) (holding that there was no possibility the defendant was prejudiced when he was told the maximum possible penalty was greater than it actually was).

The Due Process Clause requires that pleas be knowing and voluntary because a "no-contest or a guilty plea constitutes a waiver of several constitutional rights." *Cole*, 491 Mich at 332-333. MCR 6.302(B)(3) speaks to what constitutionally protected trial rights a defendant must be told he or she will be relinquishing if his or her plea is accepted:

> Speaking directly to the defendant or defendants, the court must advise the defendant or defendants of the following and determine that each defendant understands:
>
> * * *
>
> (3) if the plea is accepted, the defendant will not have a trial of any kind, and so gives up the rights the defendant would have at a trial, including the right:
>
> (a) to be tried by a jury;
>
> (b) to be presumed innocent until proved guilty;
>
> (c) to have the prosecutor prove beyond a reasonable doubt that the defendant is guilty;
>
> (d) to have the witnesses against the defendant appear at the trial;
>
> (e) to question the witnesses against the defendant;
>
> (f) to have the court order any witnesses the defendant has for the defense to appear at the trial;
>
> (g) to remain silent during the trial;
>
> (h) to not have that silence used against the defendant; and
>
> (i) to testify at the trial if the defendant wants to testify.

(b) the maximum possible prison sentence for the offense[.]

[4] At the time, GCR 1963, 785.7(1)(b) provided as follows: "the maximum sentence and the mandatory minimum sentence, if any, for the offense to which the plea is offered[.]"

MCR 6.302(B) goes on to provide a method for satisfying the rule:

> The requirements of subrule[] (B)(3) . . . may be satisfied by a writing on a form approved by the State Court Administrative Office. If a court uses a writing, the court shall address the defendant and obtain from the defendant orally on the record a statement that the rights were read and understood and a waiver of those rights. The waiver may be obtained without repeating the individual rights.

In this case, defendant signed an advice of rights form. It recites the rights contained in MCR 6.302(B)(3) verbatim. Defendant affirmed that these rights were read to him, that he understood them, and that he understood he was relinquishing these rights by pleading guilty.

Defendant argues that this procedure was faulty because MCR 6.302(B) requires that he personally read the advice of rights form, which he maintains was not possible given his limited ability to read. MCR 6.302(B) does not specify a reader—only that the rights on the form were read and understood.[5] Defendant stated that the rights "were read to me" and that he understood them and had no questions about them. Moreover, the trial court specifically asked defendant's counsel if he was satisfied that the requirements of MCR 6.302(B) had been met. Counsel stated that he was satisfied, and defendant voiced no disagreement.[6]

Additionally, defendant argues he received ineffective assistance of counsel because trial counsel failed to object to both the error regarding the maximum sentence he was facing for attempted arson and the manner the trial court used to satisfy MCR 6.302(B)(3). As discussed above, although the trial court did incorrectly advise that the maximum sentence for attempted arson was 20 years, defendant cannot show he was prejudiced by the court's error. He also cannot show that the result of the proceeding would have been different had counsel objected. Additionally, because the court complied with the requirements of MCR 6.302(B)(3), counsel cannot be faulted for not raising what would have been a futile objection. *People v Unger*, 278 Mich App 210, 256; 749 NW2d 272 (2008).

We affirm.

/s/ Jane E. Markey
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra

---

[5] The transitive verb "read" is defined to mean "to receive or take in the sense of (as letters or symbols)," "to become acquainted with . . . ," and "to learn from what one has seen or found in writing or printing[.]" *Merriam-Webster's Collegiate Dictionary* (11th).

[6] Defendant also argues that a signature on a form does not make a plea knowing and understanding by itself. But the trial court did not indicate that it was relying on defendant's signature to determine that his plea was understandingly and knowingly made. Rather, the court relied on the signed waiver and defendant's oral assurances that the rights were read to him and that he understood them.

-4-